IN THE UNITED STATED DISTRICT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | CLASS ACTION |
| BUDEPRION XL MARKETING AND ) | |
| SALES PRACTICES LITIGATION ) | 2:09-CV-2811 (Lead Case) |
| (MDL 2107) ) | |
| ) | |
| ) | |

### DECLARATION OF THE HONORABLE DIANE WELSH (RETIRED)

1. I served as a United States Magistrate Judge in the United States District Court for the Eastern District of Pennsylvania from 1994 through 2005.

2. In 2005 I retired as a United States Magistrate Judge and became affiliated with JAMS, a national provider of Alternative Dispute Resolution services. I devote all my professional time to serving as a neutral mediator, arbitrator and special master.

3. I have extensive experience in mediating a wide variety of class actions including consumer, employment, securities, and mass torts class actions. I also regularly mediate cases involving the pharmaceuticals industry.

4. The parties retained me on September 26, 2011 to mediate the above-referenced case.

5. The mediation process was confidential, but both parties have authorized me to inform the court of the matters presented in this declaration. I make this declaration based on personal knowledge and am competent to testify to the matters set forth herein.

6. The purpose of the mediation was to work with the parties to explore

whether they could reach a settlement of this matter based on a joint and separate evaluation of the risks and costs each side faced in continued litigation.

7. Based on pre-mediation discussions with the parties I proposed, and the parties agreed to, a mediation process aimed at allowing me and each party to better understand the strengths and weaknesses of each side's case and the risks attendant to trial and appeal, as well as to explore appropriate monetary and non-monetary relief in the form of specific injunctive relief.

8. On November 2, 2011, the parties provided me with extensive mediation submissions, including exhibits and specific case law. Based on these submissions, it became clear to me that the recent United States Supreme Court decision in <u>Mensing</u> was going to be a significant point of discussion and potential impediment to getting this matter resolved.

9. After receiving the mediation submissions, I spent a considerable amount of time reviewing the substantive materials that each of the parties provided to me in preparation for a scheduled mediation session.

10. I convened a mediation session in Philadelphia, Pennsylvania on November 8, 2011. In attendance were class counsel, Teva counsel and Impax counsel as well as business representatives for each Defendant.

11. During the mediation session, we focused on key issues that each side contended would be relevant to the likely outcome of the case if settlement were not reached. Primary to this discussion was the potential impact of the <u>Mensing</u> decision to both sides given the holding by the United States Supreme Court as well as the current status of the record in the underlying matter. Also significant, given the national class

allegations in the case and the class certification briefs pending at the time of mediation, was the Supreme Court's holding in Dukes v. Walmart.

12. During multiple ex parte and joint meetings, proposals and counter-proposals for settlement were exchanged and discussed, touching on monetary relief and on specific items of injunctive relief relating to label changes, quality control, reporting requirements for the future as well as other non-economic issues.

13. At the end of an eleven (11) hour day of mediation, and after having reached an agreement in principal on most of the key issues, the parties agreed that they would continue their discussions to finalize the terms of the injunctive relief while keeping me involved in the discussions to provide any assistance that I could along the way. Thereafter, the parties worked together and ultimately agreed on all of the outstanding issues and signed a Settlement Agreement. The parties then worked together to prepare appropriate papers to begin the process of seeking court approval.

14. Throughout the entire mediation process, it was clear to me that each of the parties were represented by experienced and competent counsel, willing, if necessary, to litigate the matter to conclusion.

15. In fact, as both a United States Magistrate Judge and as a mediator and arbitrator with JAMS, I have had prior experience with many of the lawyers representing the class as well as the Defendants in this matter.

16. In my view, based on my experience in this matter as well as my prior experience with these lawyers, each party was represented by zealous advocates for their clients who were effective participants in the effort to reach a settlement that fairly valued the risk and opportunities of each party in the litigation.

17.   I observed nothing that suggested any collusion or other untoward behavior on the part of counsel for any party.  In fact, it is apparent that this was not the case and is consistent with my prior experience with these lawyers.

18.   The ultimate terms of the settlement represented a compromise of the parties' initial positions, but in my view these compromises were the product of the parties' reasonable assessment of the perceived relative strengths and weaknesses of the positions and the risks inherent in continued litigation.  Specifically, the compromises by both parties also demonstrated a close and hard look at the <u>Mensing</u> decision and the effect it may have had on this case.

19. Based on my extensive review of case exhibits, the parties' mediation submissions and the parties' arguments relating to the law and the evidence at the mediation, the settlement reached by the parties is consistent with the judgments I reached about the strengths and weaknesses of the parties' cases before, during and after the mediation process.

_____
HONORABLE DIANE WELSH (RETIRED)

Date: March 21, 2012

Sworn to and Subscribed this
21st day of March, 2012

_____
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DEANA M. BILOTTI, Notary Public
City of Philadelphia, Phila. County
My Commission Expires January 3, 2014